UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PEDRO SANCHEZ-TORIBIO,

                    Petitioner,

vs.                                    Case No.  2:05-cv-76-FtM-29SPC

SECRETARY,  FLORIDA  DEPARTMENT  OF
CORRECTIONS  and  FLORIDA  ATTORNEY
GENERAL,[1]

                    Respondents.

_____

## OPINION AND ORDER

      Petitioner Pedro Sanchez-Toribio (hereinafter "Petitioner" or

"Sanchez-Toribio"), who is proceeding *pro se*, initiated this action

by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition)

pursuant to 28 U.S.C. § 2254 on February 17, 2005.  Petitioner

challenges his state court judgment of conviction of second degree

murder  entered  in  the  Twelfth  Judicial  Circuit  Court,  DeSoto

County, Florida.  Petition at 1.  In compliance with this Court's

Order, Respondent filed a Response (Doc. #9, Response).  Respondent

submitted numerous exhibits in support of the Response, including

the post-conviction motions filed by Petitioner and the record from

Petitioner's state court proceedings.  See Docs. #10-11; Exhs. 1-8.

---

[1]The Supreme Court has made clear that there "is generally only one proper
respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 124 S.
Ct. 2711, 2717 (2004).  This is "'the person with the ability to produce the
prisoner's body before the habeas court.'"  Id.  In this case, the proper party
Respondent is the Secretary of the Department of Corrections and as such the
Court *sua sponte* dismisses the Attorney General of the State of Florida as a
named Respondent.

After the Court granted Petitioner's motion for extension of time, Petitioner filed a Reply to the Response (Doc. #14, Reply).  This matter is ripe for review.

## II.

Petitioner was charged in an Amended Information with second-degree murder, in circuit case number 00-0387-CF.  Response at 2; Amended Information, Exh. 1 at 24.  In summary, the Amended Information alleged that Petitioner "unlawfully, by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual," killed the victim "by shooting the victim with a handgun."  Exh. 1 at 24.

The arresting report form stated that on August 26, 2000, the Desoto County Sheriff's Office received a phone call that someone had been shot.  See Arresting Report, Doc. #11 at 2.  Deputy Burke responded to the call and arrived at the scene where two individuals, Catherine Moya and Gustavo Aguilar, indicated that the person who shot the victim, Sanchez-Toribio, was standing in the yard, adjacent to their trailer.  Id.  Deputy Burke approached Sanchez-Toribio, who was holding a six shot revolver in his right hand, partially concealed behind his back.  Id.  When asked to drop the weapon, Sanchez-Toribio complied.  Id.  Deputy Burke then entered the trailer and found the victim on the couch with a puncture wound, appearing to be a gunshot wound, below his nose. Id.  The officers at the scene took statements from various

witnesses, including one individual who stated he saw Sanchez-Toribio shoot the victim while the victim was sitting on the couch. Id. at 2-3. Deputy Vitali, who was also a responding officer, interviewed witnesses. Id. at 3. According to the arresting report, Sanchez-Toribio was taken into custody and advised of his Miranda rights, thereby signing a waiver of his rights form, which was in Spanish. Id. During the interview, Sanchez-Toribio confessed to shooting the victim, stating that he arrived home and found the victim present. Id. Sanchez-Toribio explained that the victim had called him a "homosexual," which angered him; so, he shot the victim. Id. The arresting report states that the victim died from a single gun shot wound to the face. Id.

Prior to trial, defense counsel filed a motion to suppress Petitioner's "statements, admissions, or confessions," arguing that Petitioner was "illegally interrogated" as he did not "knowingly, voluntarily and intelligently" waive his rights pursuant to the Miranda warning. Motion to Suppress, Exh. 1 at 20-21. Also, Petitioner argued in the motion to suppress that he was never informed of his rights pursuant to Article 36 of the Vienna Convention prior to questioning. Id. at 20. After conducting a hearing, the trial court entered a written Order denying the motion to suppress, finding that Article 36 of the Vienna Convention did not allow for exclusion of evidence. See trial court order dated April 2, 2002, Exh. 1 at 107. The trial court accepted the testimony of Deputy Vitali as clear and convincing evidence and

rejected the defense witness' testimony, and found that the State met its burden in establishing that Petitioner understood and waived his <u>Miranda</u> rights.  <u>Id.</u>   After a jury trial, Petitioner was found guilty of murder in the second degree.  Jury Verdict Form dated April 11, 2002, Exh. 1 at 150.  Petitioner was sentenced to life in prison with a minimum mandatory sentence of twenty-five years.  Response at 2, Exh. 1 at 154.

Petitioner, represented by a special assistant public defender, filed a direct appeal raising four claims of trial court error.  Exh. 2 at 8; Response at 3.  On direct appeal, Petitioner argued that the trial court erred by: (1) failing to instruct the jury on manslaughter pursuant to § 782.11, Florida Statutes (2000); (2) denying Petitioner's motion to suppress when Petitioner did not speak English, could not read the <u>Miranda</u> warning, and did not knowingly, freely, and voluntarily waive his <u>Miranda</u> rights prior to interrogation; (3) denying the motion to suppress when Petitioner was not advised of his rights under the Vienna Convention prior to interrogation; and (4) overruling Petitioner's objection to a minimum mandatory sentence for second degree murder with a firearm.  <u>Id.</u>  The State filed an Answer Brief.  Response at 3; Exh. 3.  The appellate court *per curiam* affirmed the trial court's decision and mandate issued on July 23, 2003.  Response at 3; Exh. 4-5.

-4-

On March 24, 2004, Petitioner filed a *pro se* 3.850 motion for post-conviction relief pursuant to the Florida Rules of Criminal Procedure.  Response at 3-4; Exh. 6.   Petitioner raised eight grounds,[2] including:

(1) "Court error" in that the trial court gave the jury instructions on justifiable and excusable homicide but neglected to include justifiable and excusable homicide on the verdict form;

(2) "Court error" in that the trial court proceeded to trial without first having read the formal charging document to the jury;

(3) "Court error" in that the trial judge made an improper comment in response to the jury's question without input from either counsel;

(4) "State error" in that the information alleged "evincing [sic] a depraved mind" but the state did not prove at trial that Petitioner acted with a "depraved mind" or "malice";

(5) "Court error" in that the trial court did not instruct the jury on Petitioner's theory of defense that the victim was trespassing;

(6) [Ground Eight] "Jury verdict" error in that the jury's question indicated that a minority of the jurors persuaded the majority to vote in favor of second-degree murder;

(7) [Ground Nine] "Sentencing error" in that Petitioner was sentenced to a twenty-five year minimum mandatory sentence without the jury having found that he discharged a firearm;

(8) [Ground Ten] The jury should have mitigated Petitioner's conviction down to manslaughter because Petitioner had been drinking at the time of the offense, was provoked by the victim, thought he only wounded the

---

[2]Petitioner's 3.850 motion included 8 claims; however, the claims were misnumbered as there is no claim numbered 6 and 7.  See Exh. 6. Instead, the motion skips to claims 8, 9, and 10. Id.

victim, and was unfamiliar with the "American way of
life."

See id.  The trial court denied Petitioner's 3.850 motion on April
20, 2002.  Exh. 7.  The trial court found that grounds one, two,
three, four, five, and eight were procedurally barred because
Petitioner should have raised those issues on direct appeal, which
he did not, and these issues were not properly raised in a 3.850
motion.  Id. at 2.  With regard to Ground Nine, the trial court
found the jury verdict form "conclusively refuted" Petitioner's
allegations as the verdict form contained a check mark before the
following statement: "1. The [Petitioner] discharged a firearm
causing death or great bodily harm."  Id. at 3.  Petitioner
appealed the trial court's decision to the appellate court.  Exh.
8.  The appellate court *per curiam* affirmed the trial court's
decision on December 29, 2004, and mandate issued on January 24,
2005.  Exh. 9

### III.

### A.

Petitioner then filed his federal Petition for Writ of Habeas
Corpus, requesting that the Court grant him habeas relief and a new
trial.  Petition at 24.  The Petition raises the following four
grounds:

**(1) the trial court's failure to give the requested jury
instruction on manslaughter resulted in a due process
violation;**

**(2) the admission of Petitioner's confession at trial violated the Fifth and Fourteenth Amendments of the United States Constitution as Petitioner did not understand the constitutional rights he was waiving;**

**(3) the admission of Petitioner's confession violated the Vienna Convention;**

**(4) Petitioner's minimum mandatory sentence was imposed contrary to _Apprendi v. New Jersey_, 530 U.S. 466 (2000) because the jury did not determine that Petitioner used firearm.**

Petition at 6-19; Response at 5.

**B.**

Because Petitioner filed his Petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). _Penry v. Johnson_, 532 U.S. 782, 792 (2001); _Henderson v. Campbell_, 353 F.3d 880, 889-90 (11th Cir. 2003), _cert. denied_, 543 U.S. 811 (2004). The AEDPA establishes a highly deferential standard of review for state court judgments. _Parker v. Sec'y for Dep't of Corr._, 331 F.3d 764 (11th Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." _Bell v. Cone_, 535 U.S. 685, 693 (2002). Several aspects of § 2254, as amended by the AEDPA, are relevant to reviewing this Petition.

**C.**

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the ground that petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States.  28 U.S.C. § 2254(a).  A violation of state law is insufficient to warrant review or relief by a federal court under § 2254.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

**D.**

If the grounds asserted warrant review by a federal court under § 2254, a petitioner must have afforded the state courts an opportunity to address the federal issues.  28 U.S.C. 2254(b)(1)(A); Baldwin v. Reese, 541 U.S. 27 (2004); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998), cert. denied, 525 U.S. 963 (1998).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Henderson, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Snowden, 135 F.3d at 735 ("Exhaustion of state remedies requires that the [state prisoner] 'fairly present federal claims to the state courts in

order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" (quoting Duncan v. Henry, 513 U.S. 364, 365 (1999)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." Smith, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson, 353 F.3d at 891 (quoting Judd v. Haley, 250 F.3d at 1313).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. Henderson, 353 F.3d at 892. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. Id. "Cause" ordinarily requires a petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Id.; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995),

cert. denied, 519 U.S. 838 (1996).  To show "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson, 353 F.3d at 892.  Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson, 353 F.3d at 892; House v. Bell, 126 S. Ct. 2064 (2006).

**E.**

Even where the claim is federal in nature and has been properly exhausted, additional § 2254 restrictions apply.  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).  "[C]learly established [Federal] law" is the governing legal principle, not

the *dicta*, set forth by the United States Supreme Court at the time the state court issues its decision. Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003); Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003), cert. denied, 540 U.S. 965 (2003). A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown, 544 U.S. at 141; Stephens v. Hall, 407 F.3d 1195, 1202 (11th Cir. 2005)(citations omitted). A state court decision does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Parker v. Secretary, 331 F.3d 764, 775-76 (11th Cir. 2003), cert. denied, 526 U.S. 1101 (1999).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but applies

it to the facts of the particular inmate's case in an objectively unreasonable manner; or, if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. Brown, 544 U.S. at 1439; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).   The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable.   Mitchell, 540 U.S. at 17-18; Andrade, 538 U.S. at 75-77; Vincent, 538 U.S. at 639; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Williams v. Taylor, 529 U.S. 362, 409-10 (2000).  Depending upon the legal principle at issue, there can be a range of reasonable applications.  Alvarado, 541 U.S. at 663-64.   Thus, a federal court's review is not *de novo*, but requires a showing that the state court decision is objectively unreasonable.  Id. at 665-66.

## F.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."   28 U.S.C. § 2254(d)(2).  Where credibility is at issue, relief may only be granted if it was unreasonable for the state court to credit the testimony of the witness.  Rice v. Collins, 126 S. Ct. 969, 974 (2006).   Additionally, a factual finding by a state court is

presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 125 S. Ct. 2317, 2325 (2005); <u>Henderson</u>, 353 F.3d at 890-91.   The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.   <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir. 2001).

## IV.

## A.

In Ground One, Petitioner alleges that the trial court violated his due process rights when the trial court failed "to give a requested jury instruction."   <u>See</u> Petition at 6. Specifically, Petitioner argues that the "[d]efense counsel's theory was that Petitioner shot the victim while the victim was doing an unlawful act--trespass."   <u>Id.</u> At trial, Petitioner wanted the judge to instruct the jury on the charge of "manslaughter . . . where the victim is trespassing"; however, the trial court denied defense counsel's request.   <u>Id.</u> Based on the foregoing, Petitioner argues the trial court violated <u>Keeble v. United States</u>, 412 U.S. 205 (1973).   <u>Id.</u> at 7.   At issue in <u>Keeble</u> was "whether an Indian prosecuted under the [Major Crimes] Act [of 1885] [was] entitled to a jury instruction on a lesser included offense where that lesser offense is not one of the crimes enumerated in the Act."   <u>Keeble</u>, 412 U.S. at 206 (footnote omitted).   In determining this issue, the

Court noted that "[a]lthough the lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, it is now beyond dispute that the defendant is entitled to instruction on the lesser included offense **if the evidence** would permit a jury rationally to find him guilty of the lesser included offense and acquit of the greater." See id. at 208 (emphasis added)(noting, also, other rulings recognizing the defendant's right that the jury be instructed on the lesser included offense).

Respondent argues that this claim is procedurally defaulted. Response at 7.   In particular, Respondent argues that although Petitioner raised this claim in both his direct appeal and his 3.850 motion, Petitioner did not articulate his claim in terms of any federal constitutional deprivation. Id. Petitioner did raise this claim regarding the jury instruction first in his direct appeal to the appellate court and a second time in his 3.850 motion[3] to the trial court.   Direct Appeal, Exh. 2 at 9-13; Response Direct Appeal, Exh. 3 at 21-24; Motion 3.850, Exh. 6 at 7.

---

[3]The trial court denied Petitioner relief on this claim, finding the claim procedurally barred.  Exh. 7 at 20.  Specifically, the trial court found that this issue "should have been raised, if at all, on the Defendant's direct appeal. 'Issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack.' Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla. 1995)."   Id.   Further, the trial court reasoned "[p]ostconviction proceedings under Rule 3.850 are not to be used as a second appeal, nor is it appropriate to use a different argument to relitigate the same issues raised on direct appeal.  See Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla. 1994)." Exh. 7 at 20.

In his direct appeal, Petitioner did not articulate this claim in terms of a federal constitutional deprivation.  See Exh. 2 at 9-13. Instead, Petitioner argued that the trial court's error in failing to instruct the jury on manslaughter when the victim was allegedly trespassing amounted to harmful, reversible error.  Exh. 2 at 13.

"[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995).  In Duncan, the Court specifically noted that, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at the state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan, 513 U.S. at 366 (citing Anderson v. Harless, 459 U.S. 4 (1982)).  Based upon a review of the record, it is clear that Petitioner did not exhaust this claim at the state level.

As previously stated, if a petitioner fails to raise his federal habeas claims properly in the state court, then the petitioner is barred from pursing the same claim in federal court absent an exception to overcome the procedural bar, including a showing of cause for and actual prejudice from the procedural default.  Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999). Generally, a procedural default can occur in two ways.  First, the federal court is required to respect the state court's decision

where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the claim is procedurally defaulted. Id. Second, "if the petitioner simply never raised the claim in state court, and its obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court." Id. at 1303 (internal citations omitted). If claims were presented to the state court, then the Court asks "whether the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar, i.e., an adequate and independent state ground." Id. (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). If the claims were not presented to the state court, and the second instance applies, then the Court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Id.

Here, the Court must determine whether it would now be futile for Petitioner to now attempt to exhaust his state remedies under the State's procedural default doctrine. The Court finds that Petitioner's future attempts to exhaust this claim of trial court error arising from the trial court's jury instructions would be futile and as such this claim is procedurally barred. Specifically, according to Florida law, claims of trial court error should be raised on direct appeal. See Pooler v. State, ___ So.2d ___, 2008 WL 247507, *9 (Fla. Jan. 31, 2008)(citing Rodriquez v.

State, 919 So.2d 1252, 1262 n.7, 1280 (Fla. 2006); Occhicone v. State, 768 So.2d 1037, 1040 n.3 (Fla. 2000) ("[C]laims challenging the validity of jury instructions should be raised on direct appeal, not motions for postconviction relief.")); Cherry v. State, 659 So.2d 1069, 1072 (Fla. 1995)(noting that claims which could have been raised on direct appeal are procedurally barred in a postconviction proceeding); Sampson v. State, 845 So.2d 271, 272 (Fla. 2d DCA 2003)(noting that claims of trial court error are foreclosed from collateral review because they could have and should have been raised on direct appeal). Although Petitioner raised this claim in his direct appeal, he did not articulate a federal deprivation and, as such, did not exhaust his federal claim. See Duncan, 513 U.S. at 366 (citing Anderson v. Harless, 459 U.S. 4 (1982)). Further, Petitioner does not make the requisite showing of either cause and resultant prejudice, or a fundamental miscarriage of justice, to overcome the procedural default. Thus, the Court finds Ground One of the Petition is procedurally defaulted.

**B.**

In Ground Two, Petitioner argues that the trial court committed error by denying defense counsel's motion to suppress, thereby allowing Petitioner's confession to come into evidence. Petition at 8. Specifically, Petitioner argues that he did not understand his Miranda rights because he is a "Mexican migrant worker" and could not speak or write English. Id. Petitioner

further refers the Court to doctors Ramos and Visser, defense witnesses, who after conducting a psychology examination of Petitioner specifically testified that it was their belief that Petitioner did not understand his <u>Miranda</u> rights. <u>Id.</u> at 10-11. Respondent argues, in the Response, that Petitioner's allegations amount to "nothing more than a disagreement with the trial court's determination that the law enforcement officers' version of events was more credible than Dr. Visser's conclusion that Petitioner did not understand and knowingly and voluntarily waive his rights." Response at 13. Respondent further argues that the state court's findings are binding on this Court when those findings are not rebutted by clear and convincing evidence. <u>Id.</u>  In his Reply, Petitioner reiterates he was "tricked out of his Constitutional rights." Reply at 5.  Petitioner now asserts for the first time that he checked the box "yes" to request a lawyer and further states that he was under the influence of alcohol at the time of the interview. <u>Id.</u> at 4.  The Court notes, at the outset, that the record contains no support for Petitioner's assertions.

Petitioner's defense counsel initially raised the <u>Miranda</u> issue in a motion to suppress.  Hearing at Exh. 1, Vol. II of V.[4] After holding a hearing, the trial court denied the Petitioner's

---

[4]For purposes of clarifying the citations contained herein, Respondent provided the Court with exhibits labeled with tabs 1-8, but also labeled the volumes of the trial transcript as "Exhibit 1."  The trial transcript, however, is also labeled by volume number, i.e., Vol. II of V. etc. Consequently, references to the trial transcript will be by volume number (i.e. Vol. I), then Exhibit number.

motion to suppress.  Exh. 1 at 107.  Petitioner later raised this ground for relief in his direct appeal, see Brief, Exh. 2 at 14-19; State Response, Exh. 3 at 1-8.  The appellate court per curiam affirmed the trial court's decision and mandate issued.  See Exh. 4, Sanchez-Toribio, 851 So.2d 164 (Fla. 2d DCA 2003); Exh. 5, Mandate.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The United States Supreme Court in Miranda v. Arizona considered the scope of this Fifth Amendment guarantee against self incrimination. Miranda, 384 U.S. 436 (1966).  In Miranda, the Court held that before a suspect, in custody, can be interrogated, the suspect must be informed of his right to remain silent, that what he says can be used against him, and the right to have an attorney during interrogation, or if he cannot afford an attorney, the right to have one appointed.  Id. at 478-479.  It is clearly established federal law that a state cannot introduce a suspect's testimony provided in the absence of an attorney without first showing that the suspect made a voluntary, knowing, and intelligent waiver of his Miranda rights.  Hart v. Attorney General for Fla., 323 F.3d 884, 891 (11th Cir. 2003)[5].  A two-prong test is required to

_____

[5]In Hart, the Court found that the Defendant's "waiver was, in fact,  the product of deception and not 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"
(continued...)

determine whether a waiver was voluntary, knowing, and intelligent is twofold:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court conclude that the Miranda rights have been waived.

Moran v. Burbine, 465 U.S. 412, 421 (1986)(quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)).  Courts look at four factors, none of which are independently dispositive, to determine whether a statement is voluntary: (1) whether the Miranda warning was given; (2) "'[t]he temporal proximity of the arrest and the confession'"; (3)"'the presence of intervening factors'";(4) "'the purpose and flagrancy of the official misconduct.'" Lawhorn v. Allen, ___ F.3d ___, 2008 WL 638596, *13 (11th Cir. Mar. 11, 2008).  To determine "knowing" and "intelligent" waiver of Miranda rights, the courts focus on the suspects' comprehension of their rights.  Blanco v. Singletary, 943 F.2d 1477, 1509-1510 (11th Cir. 1991)(citing Mincey v. Arizona, 437 U.S. 385 (1978)).  "'If a defendant cannot understand the nature of his rights, he cannot waive them

---

[5](...continued)
The Court further noted that in spite of Detective Mauer's testimony that he "went to great lengths to apprise [the Defendant] of his rights," fully explaining each Miranda right before the Defendant signed the waiver form, the Court must look to the totality of the circumstances surrounding the interrogation.  Id. at 893.

intelligently.'" <u>Miller v. Dugger</u>, 838 F.2d 1530, 1539 (11th Cir. 1988).

Further, although a suspect's signature on a waiver of <u>Miranda</u> rights form is strong evidence, it is not conclusive evidence that the rights were waived. <u>Hart</u>, 323 F.3d at 893 (citing <u>North Carolina v. Butler</u>, 441 U.S. 369 (1979)). Rather, the court must look to the "totality of the circumstances." <u>Id.</u> In the event that a court finds that statements were admitted in violation of <u>Miranda</u>, then the court must determine whether the error was harmless. <u>Id.</u> at 895. The determination of whether a statement made in violation of <u>Miranda</u> entered into evidence amounted to harmless error "'requires a two-fold inquiry into (1) the effect of the erroneously admitted statement upon the other evidence introduced at trial, and (2) upon the conduct of the defense." <u>Id.</u>

In light of this law and the Court's standard of review under the AEDPA, the Court reviews the state court record. After conducting a suppression hearing and hearing testimony, the trial court entered a one-page, written order denying the defense's motion to suppress, finding that Petitioner "understood his rights and voluntarily and knowingly waived them."[6] Exh. 1 at 107. Based on the totality of the circumstances, including the testimony that Petitioner was read his <u>Miranda</u> rights and signed the waiver form, the Court finds the trial court neither violated federal law nor

---

[6]Trial court did not rule that Petitioner "intelligently" waived his rights. <u>See</u> Exh. 1 at 107.

applied an unreasonable determination of the facts in light of the evidence presented.

During the trial court's hearing on the motion to suppress, the court heard testimony from both of the deputies that were present during Petitioner's interrogation, Deputies Vitali and Mays, and a psychologist who examined Petitioner. Exh. I, Vol II of V at 173. The trial court heard testimony that the interview occurred approximately two hours after the crime at the sheriff's office. Id. at 237. Deputy Vitali testified that he believed Petitioner spoke Spanish only. Id. at 178, 211. Because Petitioner appeared to speak Spanish, Deputy Vitali, who has spoken Spanish his whole life, acted as the interpreter for Deputy Mays during Petitioner's interrogation. Id. at 173-174. Vitali read the Miranda waiver form to Petitioner. Id. at 177. Vitali then asked Petitioner if he wanted to speak with them now and Petitioner nodded his head in the affirmative. Id. at 178. Deputy Vitali testified Petitioner seemed to answer the questions in context. Id. at 183. At the conclusion of the interrogation, about one hour later, Vitali re-asked Petitioner whether he felt like he had to give the statement, to which it appeared Petitioner did not understand Vitali's question. Id. at 184. So, Vitali reworded the question, asking whether Petitioner "was not forced to say anything," to which Petitioner responded affirmatively, agreeing he was not forced to confess. Id. at 184. Petitioner signed the Miranda form, which was printed in the Spanish language. See Exh.

1 at 89.   Deputy Mays, the detective supervisor, similarly testified that the <u>Miranda</u> warning was given to Petitioner.   Exh. I, Vol II of V  at 232.   Further, Mays testified that he directed Vitali to read the <u>Miranda</u> warnings, to make sure Petitioner understood the <u>Miranda</u> requirements, and then to ask Petitioner the three follow-up questions concerning <u>Miranda</u>.   <u>Id.</u> at 239.   Mays also testified that it appeared that Petitioner was acknowledging and communicating with Vitali.   <u>Id.</u> at 234.   Although Petitioner asserts for the first time in his Reply that he checked "yes" next to a response for an attorney, upon review of the record it appears that at no time before or after the <u>Miranda</u> warning did Petitioner ask for an attorney.   <u>See</u> transcribed/translated confession, Exh. 1 at 35-88.   Indeed, the record reflects that Petitioner said "no" when asked if he had asked a law officer to permit him to speak with an attorney.   <u>Id.</u> at 89, 90.

The defense experts disagreed with the officers' impressions. The trial court heard testimony from Dr. Visser, a licenced psychologist, and a licensed mental-health counselor, and Mr. Ramos, who acted as Visser's interpreter and conducted the psychological testing and an interview of Petitioner.   <u>Id.</u> at 202. Dr. Visser testified that he questioned whether Petitioner had the capability of understanding and waiving his <u>Miranda</u> rights.   <u>Id.</u> at 219.   Specifically, Dr. Visser noted that although Petitioner said he was not forced to confess, after reviewing the confession and evaluating Petitioner, Dr. Visser found that Petitioner believed he

had to say what happened.  <u>Id.</u> at 224.  Specifically, Dr. Visser noted that Petitioner stated the following:"'I just -- I have to say just what happens.'"  <u>Id.</u>  Based on his review of the transcribed confession and his subsequent psychological testing, Dr. Visser believed that Petitioner did not intelligently or knowingly waive <u>Miranda</u>.  <u>Id.</u> at 228.

Nonetheless, upon review of the record and considering the totality of the circumstances, the Court finds no merit to this claim.  The trial court's decision was neither contrary to, or involved an unreasonable application of clearly established federal law, nor did it apply an unreasonable determination of facts in light of the evidence presented in the State court proceeding. Both deputies testified that Petitioner was read his <u>Miranda</u> rights, that he appeared to answer the questions in context, and never asked for an attorney.  Additionally, Petitioner's signature on the <u>Miranda</u> waiver form, which was printed in Spanish, is strong proof that he voluntarily waived his rights.  <u>See</u> <u>Hart</u>, 323 F.3d at 893.  Based on the foregoing, the Court denies relief as to Ground Two on the merits.

## C.

In Ground Three, Petitioner argues that his confession, discussed *supra*, was admitted in violation of Article 36 of the Vienna Convention (hereinafter "Vienna Convention" or "Convention") because he was not advised of his rights pursuant to the

Convention.   Petition at 15.   The Petition does not state Petitioner's country of citizenship, or what rights under the Vienna Convention Petitioner believes were violated.   <u>See id.</u> at 15-16.   In support of his argument, however, Petitioner references a case from the Fifth Circuit Court of Appeals, asserting that the United States Supreme Court granted certiorari in the case, <u>Medellin v. Dretke</u>.[7]   <u>Id.</u> at 16.

Petitioner raised his Vienna Convention claim in a pre-trial motion to suppress.   <u>See generally</u> Exh. 1.   After conducting a hearing, the trial court denied Petitioner relief on this ground, finding that "[t]here is no right in a criminal prosecution to have evidence excluded due to a violation of Article 36 of the Vienna Convention.   The exclusionary rule is an inappropriate sanction, absent any underlying constitutional violations or rights."   Exh. 1 at 107.   Petitioner then raised this claim in his direct appeal. Exh. 2.   The appellate court *per curiam* affirmed the decision of the trial court and mandate issued on July 23, 2003.   Exh. 4, Exh. 5.   Consequently, the Court deems this ground exhausted.

It is undisputed that Petitioner was not advised of his rights under the Vienna Convention before the interrogation.   Response at 13.   Respondent clarifies Petitioner's argument, stating that the

---

[7]Petitioner cites the case as "Jose Medellin, 04-5928, Medellin v. Dretke, Dr. TX. DCJ., certiorari granted on December 10, 2004, see also, decision below 371 F.3d 270 (5th Cir. 2004)."   Petition at 16.   On March 25, 2008, the United States Supreme Court issued its opinion in <u>Medellin v. Texas</u>, ___ S. Ct. ___, 2008 WL 762533, *6 (Mar. 25, 2008).

Petitioner alleges a violation of his rights stemming from his inability to consult with the Mexican Consulate prior to the interrogation.  Id. at 13-14.  However, Respondent notes that the testimony from the officers presented during the trial court's motion to suppress hearing evidenced that Petitioner did not inform police that he was a citizen from another country.  Id. at 14; Exh. 1 at 187.

Respondent refers to the Vienna Convention, arguing that the preamble of the Vienna Convention does not confer an individual privileges; rather, the purpose of the Convention is to ensure the efficient performance of functions buy consular posts on behalf of the States.  Response at 15.  Respondent further argues that neither the text of the Vienna Convention, nor any United States Supreme Court precedent, requires suppression of evidence for a violation of the Convention's provisions.  Id.  Thus, Respondent asserts that "[b]ecause no clearly established Federal law directs that Article 36's consular access provision institutes a judicially enforceable right, relief for a violation of the article may not be granted in a federal habeas petition" under § 2254.  Id. at 15-16. Petitioner does not address the Respondent's arguments in his Reply.  See generally Reply.

Again, the Court reviews Petitioner's claim under the requirements set forth in the AEDPA.  First, however, an overview of the Vienna Convention is necessary.  See Vienna Convention, 21 U.S. T. 77, T.I.A.S. No. 6820.  Upon the advice of the Senate, the

United States ratified the Vienna Convention and the Optional Protocol Concerning the Compulsory Settlement of Disputes (Optional Protocol, 21 U.S. T. 325, T.I.A.S. No. 6820) to the Vienna Convention. See Medellin v. Texas, 2008 WL at *6. The purpose of the Convention, according to its preamble, is to "contribute to the development of friendly relations among nations." See 21 U.S. T. at 79; Medellin, 2008 WL at *6 (citing Sanchez-Llamas, 548 U.S. 331 (2006)). Article 36 of the Convention provides:

> If he so requests, the competent authorities of the receiving State shall without delay inform the consular post of the sending State if, within its consular district, a national of the State is arrested or committed to a prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody, or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under the subparagraph.

Vienna Convention, Art. 36(b), Id. at 101.

If a dispute arises among nations on the interpretation or the application of the Vienna Convention, the International Court of Justice (hereinafter "ICJ") has jurisdiction to hear the dispute. Medellin, 2008 WL *6-7. In the Case Concerning Avena & Other Mexican Nat'ls, 2004 ICJ 12 (hereinafter "Avena"), the ICJ ruled that the United States had violated the Vienna Convention by failing to inform 51 Mexican nationals of their Vienna Convention rights and as such those Mexican nationals "were entitled to review and reconsideration of their state-court convictions and sentences

in the United States." See Medellin, 2008 WL *6 (discussing Avena).

Thereafter, in contrast to the ICJ opinion, the United States Supreme Court ruled that the ICJ's determination in Avena did not preclude the application of state default rules in state habeas petitions. Id. (discussing Sanchez-Llamas v. Oregon, 548 U.S. 331 (2006)); see also Maharaj v. Secretary Dep't of Corr., 432 F.3d 1292, 1320 (11th Cir. 2005)(noting that there is no precedent that a decision from the ICJ is binding upon this or any other state or federal court and as such the lower court's decision did not result in decision contrary to Supreme Court and was not unreasonable application of clearly established federal law). In Medellin, the United States Supreme Court held that the ICJ's opinion in Avena did not constitute directly enforceable federal law. Medellin, *6. The petitioner in Medellin was a Mexican national, convicted of capital murder, and sentenced to death in the United States. Id. Medellin challenged his conviction in his first application for state post-conviction relief, arguing that he was entitled to habeas relief because local law enforcement officers did not inform him of his right under the Vienna Convention to contact his country's consulate. Id. at *7-8. The Court affirmed the lower court's decision, which had ruled that "Medellin's Vienna Convention claim was procedurally defaulted and that Medellin had failed to show prejudice arising from the Vienna Convention violation." Id. This holding is similar to the Eleventh Circuit

Court of Appeals decision in <u>Darby v. Hawk-Sawyer</u>, 405 F.3d 942, 946 (11th Cir. 2005).   In <u>Darby</u>, the petitioner, a Jamaican national, filed a habeas petition pursuant to 28 U.S.C. § 2241 arguing that he was entitled to relief because he was not provided an opportunity to contact his country's consulate.   <u>Id.</u>   The Eleventh Circuit affirmed the district court's denial of the petition, reasoning that because petitioner did not allege how the lack of contact with his consulate affected his trial, he was not entitled to relief.   <u>Id.</u>

Here, Petitioner argues that since he was a citizen of Mexico, he was entitled to be informed of his right to contact the Consulate in Mexico pursuant to the Vienna Convention.   Respondent, *inter alia*, argues that the Vienna Convention does not confer an individual the right to consular assistance.   The Court disagrees with this argument in light of the Eleventh Circuit Court of Appeals reasoning that the Vienna Convention "*arguably* confers on an individual the right to consular assistance following arrest."   <u>See</u> <u>Darby v. Hawk-Sawyer</u>, 405 F.3d 942, 946 (11th Cir. 2005)(citing <u>Breard v. Greene</u>, 523 U.S. 371 (1998))(emphasis added)(assuming *arguendo* that the Vienna Convention confers an individual rights, but does not decide the issue as a matter of law).   The Supreme Court has noted, however, that "'[e]ven were [such claims] properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction

without some showing that the violation had an effect on the trial.'" Id.

In the case *sub judice*, Petitioner exhausted his state remedies by preserving the issue at trial.  Nonetheless, Petitioner makes no showing that the officers' failure to advise him that he could contact the Mexican Consulate affected his trial.  Petitioner had intelligently, knowingly, and voluntarily waived his Miranda rights and confessed to the crime.  Because Petitioner does not allege or show that his lack of contact with the consulate affected his trial, Petitioner is not entitled to habeas relief on Ground Three.  See Darby, 405 F.3d at 946.

**D.**

Last, Petitioner argues in Ground Four that he is entitled to habeas relief because the trial court erred when it overruled Petitioner's objection to a minimum mandatory sentence for second degree murder with a firearm, considering the State did not charge Petitioner with "possession" or "discharge" of a firearm.  Petition at 19.  Petitioner argues that in order for the enhancement of the mandatory minimum provision in the Florida statues to apply, the elements of "possession" or "discharge must be included in the information and determined by the jury.  Id. at 20.  Thus, Petitioner argues the trial court's decision was contrary to Apprendi v. New Jersey, 530 U.S. 466 (2000).

In Response, Respondent argues that Petitioner's claim, although couched in terms of a federal violation, is an issue of state law.  Response at 16.  Respondent states that this claim is grounded "upon whether the state court violated state sentencing laws when it sentenced him to the mandatory minimum sentence pursuant to § 775.087 (2)(a)(3), Florida Statutes."  Id. at 17.  Thus, Respondent argues Petitioner is not entitled to federal habeas relief.  Id.  Alternatively, Respondent argues that the state court decision did not violate Apprendi.  Id.  Specifically, the Amended Information charged Petitioner with second-degree murder, alleging that Petitioner "killed the victim 'by **shooting** the victim **with a handgun**.'"  Id. (emphasis in original)(citing Exh. 1 at 24).  The jury returned the verdict finding that "'[t]he [petitioner] discharged a firearm causing death or great bodily harm.'"  Petitioner does not address the Respondent's arguments concerning this claim in  his Reply.  See generally Reply.

Upon review of the record, Petitioner raised this claim on direct appeal and the appellate court per curiam affirmed the decision of the lower court.  See Exhs. 2, 4, 5.  The Court agrees with the Respondent's argument and finds that this claim involves matters of only state law-- whether the State allegedly violated its own sentencing procedures.  The court cannot conduct an examination of an issue concerning state law.  See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); see also Robinson v.

Secretary Dep't of Corr., Slip Copy, 2008 WL 508211 (M.D. Fla. Feb. 21, 2008). Specifically, the courts have consistently held that "[i]n the area of state sentencing guidelines . . . [a] federal court can not [sic] review a state's alleged failure to adhere to its own sentencing procedures." Id. (other citations omitted). Alternatively, upon review of the language in the charging document and the jury's verdict finding Petitioner guilty as charged, the Court finds no violation of federal law. See generally Apprendi, 530 U.S. 466. Based on the foregoing, the Court finds Petitioner is not entitled to habeas relief on Ground Four.

ACCORDINGLY, it is hereby

**ORDERED**:

1.   The Court *sua sponte* dismisses the Florida Attorney General as a named Respondent.

2.   Petitioner's Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED.**

3.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __31st__ day of March, 2008.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record